IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANNE HARDING, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:15-CV-0131-D |
| VS. | § | |
| | § | |
| COUNTY OF DALLAS, TEXAS, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging violations of § 2 of the Voting Rights Act of 1965 ("VRA"),

52 U.S.C. § 10301 *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment,[1]

plaintiffs move under Fed. R. Civ. P. 37 to compel depositions and the production of

documents.  Their motion presents questions involving legislative immunity, the legislative

privilege, the deliberative process privilege, the attorney-client privilege, work product

protection, and the availability of compelled depositions of high ranking government

officials.  For the following reasons, the court grants the motion in part and denies it in part.

I

This is an action by Anglo residents of Dallas County who allege that, as a result of

the Dallas County Commissioners Court's ("Commissioners Court's") redistricting in 2011,

---

[1]Plaintiffs assert both an equal protection claim based on an alleged denial of rights
guaranteed by the Fourteenth Amendment and an alternative equal protection claim based
on a denial of Fourteenth Amendment rights if "the Court determines that Dallas's Anglo
minority isn't a protected class under Section 2 of the Voting Rights Act." Am. Compl. ¶ 33.

Anglos who reside in Dallas County are being denied the opportunity to elect candidates of their choice to the Commissioners Court.[2] Plaintiffs sue Dallas County, Dallas County Judge Clay Lewis Jenkins ("Judge Jenkins"), and Dallas County Commissioners Theresa Daniel, Mike Cantrell, John Wiley Price, and Elba Garcia (collectively, the "County Commissioners"),[3] alleging claims under the VRA and the Equal Protection Clause of the Fourteenth Amendment.[4]

Plaintiffs move to compel the production of 335 documents containing communications between defendants and their outside redistricting consultants, Angle Strategies (the "Angle Strategies Documents"), which defendants have withheld on the basis of the "legislative privilege," the attorney-client privilege, and work product protection. Plaintiffs also seek to depose Judge Jenkins, the County Commissioners, and a representative of Dallas County, each of whom defendants have refused to produce on the basis of legislative immunity, the legislative privilege, and the apex doctrine.[5] Defendants oppose

---

[2]Plaintiffs maintain that, although Anglos compose 48% of the citizen voting age population, they are able to elect only 25% of the Commissioners (one of four Commissioners) because some Anglos are isolated in Commissioner Districts 1, 3, and 4, with no opportunity to elect their preferred candidates, and other Anglos are packed into Commissioner District 2, where their votes are unnecessarily wasted.

[3]Judge Jenkins and the County Commissioners are sued only in their official capacities.

[4]Although plaintiffs do not specify that their equal protection claims are brought under 42 U.S.C. § 1983, the court assumes that they are.

[5]The parties agreed that, rather than plaintiffs' noticing depositions that defendants had no intention of attending, plaintiffs would seek a ruling on, *inter alia*, defendants' obligation to appear at depositions related to this case and the limitations, if any, that the

- 2 -

the motion.

## II

The court begins with plaintiffs' motion to compel the depositions of Judge Jenkins, the County Commissioners, and a representative of Dallas County.

## A

Defendants oppose plaintiffs' motion to compel these depositions primarily on the basis of legislative immunity and the legislative privilege.

## 1

The doctrine of legislative immunity arises from the Speech or Debate Clause of the Constitution of the United States and provides absolute protection from liability when government officials take legislative actions and perform legislative duties.[6] *See* U.S. Const. art. 1, § 6. ("The Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other Place."); *see also Gravel v. United States*, 408 U.S. 606, 624 (1972). Legislative immunity extends to legislators at any level of government, including city and county actors. *See Bogan v. Scott-Harris*, 523 U.S. 44, 52-54 (1998)

_____

common-law legislative privilege imposes on plaintiffs' depositions of defendants.

[6]The rationale for granting absolute immunity to officials for legislative acts derives from the historical tradition of allowing legislators freedom to speak their minds in public debate without fear of judicial interference or exposure to personal liability. *See Bogan v. Scott-Harris*, 523 U.S. 44, 51-52 (1998). In the context of addressing local legislative action, "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process." *Spallone v. United States*, 493 U.S. 265, 279 (1990).

(making explicit that local legislators are entitled to absolute immunity); *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1192 (5th Cir. Unit A May 1981) ("[T]he logical implication of the [Supreme] Court's opinion in [*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 406-09 (1979),] is that the reasoning for clothing federal, state and regional legislators with absolute immunity is equally applicable to affording local legislators with such immunity."). "Not all actions taken by an official with legislative duties, however, are protected by absolute immunity—only those duties that are functionally legislative." *Hughes v. Tarrant Cnty., Tex.*, 948 F.2d 918, 920 (5th Cir. 1991) (citation omitted). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54.

2

The legislative evidentiary privilege is related to, but distinct from, the concept of legislative immunity. *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012). Although the Supreme Court has held that the Speech or Debate Clause provides an evidentiary privilege "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts," *United States v. Gillock*, 445 U.S. 360, 366-67 (1980) (quoting *United States v. Helstoski*, 442 U.S. 477, 489 (1979)), "the Supreme Court has unequivocally ruled that the embrace of the clause does not extend to a state legislator," *Cole v. Gray*, 638 F.2d 804, 810 (5th Cir. Mar. 1981) (citing *Gillock*, 445 U.S. at 367). As noted above, under federal common law, state and local legislators *are* absolutely immune from civil liability for their legislative activities. *Bogan*, 523 U.S. at 53-54. But the Supreme

- 4 -

Court ruled in *Gillock* that, in contrast to the privilege enjoyed by federal legislators, there is no absolute "evidentiary privilege for state legislators for their legislative acts." *Gillock*, 445 U.S. at 373. Instead, the Court held that "where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." *Id.* "*Gillock* left open the question of when, if ever, state legislators could invoke an evidentiary legislative privilege in civil cases in federal court." *Hobart v. City of Stafford*, 784 F.Supp.2d 732, 764 (S.D. Tex. 2011) (citation omitted).[7]

Neither the Supreme Court nor the Fifth Circuit has directly addressed whether a testimonial privilege arising from the doctrine of legislative immunity applies to local legislators. District courts within this circuit have reached different decisions. Some courts have applied an absolute evidentiary privilege in civil cases for state and local legislators acting within the realm of legitimate legislative activity. For example, in *Cunningham v. Chapel Hill, ISD*, 438 F.Supp.2d 718 (E.D. Tex. 2006), the court held that the testimonial

---

[7]In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977), the Supreme Court recognized a testimonial privilege for state legislators, severely limiting—but not entirely foreclosing—the possibility of piercing the privilege in discriminatory-intent claims:

> The legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports. In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege.

*Id.* at 268.

- 5 -

privilege afforded by the doctrine of legislative immunity protected the trustees of a local

school board from having to testify regarding their vote to deny the plaintiff's Level III

grievance and to ratify the school district's dissolution of its maintenance department.  *Id.*

at 723.  The court concluded:

> The testimonial privilege is an inherent aspect of the legislative
> immunity that applies to local legislators under the Speech and
> Debate Clause of the United States Constitution.  The vote taken
> by the CHISD Board of Trustees with regard to Cunningham's
> Level III grievance was a legislative act.  Accordingly, the
> doctrine of legislative immunity protects Mosely and the other
> trustees from having to testify with regard to actions taken in the
> sphere of legitimate legislative activity, including the denial of
> Cunningham's Level III grievance.

*Id.*; *see also Villareal v. Dall. Cnty.*, 2011 WL 4850258, at *2-3 (N.D. Tex. Sept. 20, 2011)

(Furgeson, J.) (holding that regional legislators' immunity "includes a testimonial privilege

that protects legislators from being deposed against their will," and concluding that where

gravamen of complaint centered around the passage of a budget item, and "regardless of the

effort to interrogate witnesses about issues other than legislative matters, the issues are so

intertwined that the dividing line cannot be thoughtfully maintained . . . any attempt to

depose members of the Dallas County Commissioners Court in this case must be precluded

by law.").

Other courts have held that the legislative privilege is qualified and can only be

applied after balancing the interests of the party seeking disclosure against the interests of

the party claiming the privilege.  *See, e.g., Perez v. Perry*, 2014 WL 106927, at *2 (W.D.

Tex. Jan. 8, 2014).  Courts following the "qualified privilege" approach assess the following

five factors in performing their balancing test:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* In considering these factors, "the court's goal is to determine whether the need for disclosure and accurate fact finding outweighs the legislature's 'need to act free of worry about inquiry into [its] deliberations.'" *Veasey v. Perry*, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014) (alteration in original) (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011)), *aff'd in part and vacated in part sub nom. Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Sept. 27, 2016) (No. 16-393); *see also BBC Baymeadows, LLC v. City of Ridgeland, Miss*, 2015 WL 5943250, at *5 (S.D. Miss. Oct. 13, 2015) (concluding that documents that are legislative in nature are privileged, but that plaintiff could obtain discovery of privileged documents by satisfying balancing test articulated in *Perez*); *Hall v. Louisiana*, 2014 WL 1652791, at *8-9 (M.D. La. Apr. 23, 2014) (recognizing "common law state legislative privilege that may yield in certain circumstances," and applying five-factor balancing test set out in *Perez*).

B

With the foregoing principles in mind, the court turns to the parties' arguments.

1

As a preliminary matter, the court disagrees with defendants' assertion that they "are shielded from being deposed in their official capacities as members of the [Commissioners Court] pursuant to the protection of legislative immunity." Ds. Br. 9. Plaintiffs are suing Judge Jenkins and the County Commissioners only in their official capacities. It is clearly established that a suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, because plaintiffs do not seek to hold any of the individual defendants liable in their personal capacities, the absolute legislative privilege does not immunize defendants from the requirement that they appear for their depositions. *See, e.g., Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 134 (5th Cir. 1986) (noting that if "the individual [School] Board members are named defendants only in their official capacities, neither qualified nor absolute immunity would apply since the individual Board members would not be threatened by personal liability."); *see also Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) ("absolute immunity is a personal defense that is unavailable in an official-capacity action"); *Roach v. Stouffer*, 560 F.3d 860, 870 (8th Cir. 2009) (holding that legislature-defendants

were not entitled to legislative immunity because they were sued only in their official capacities); *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007) (immunity, whether absolute or qualified, is a personal defense that is available only when officials are sued in their individual capacities).

2

The question whether legislative immunity provides defendants a legislative privilege against providing evidence or testimony is more difficult.  The court begins its analysis by considering whether the topics on which plaintiffs seek depositions relate to a "legislative function," as is required for the legislative privilege to apply.

Plaintiffs seek to depose Judge Jenkins and the County Commissioners on the following topics:

> (i) the Defendants' knowledge, if any, of the racial polarization of the Dallas electorate; (ii) the Defendants' knowledge, if any, of the success of the Plaintiffs' racial group in electing its preferred candidates over the last decade; (iii) the individual Defendants' conduct of their own political campaigns over that same period; (iv) Dallas County's responsiveness to the needs of the Plaintiffs' racial community, including its knowledge, if any, of that community's particularized needs; and (v) the meaning of, and factual predicate for, the public statements made concerning the contested map by or on behalf of the Defendants.

Ps. Reply 15.[8]

The court concludes that topic (iii)—defendants' conduct of their own political

---

[8]Plaintiffs initially sought depositions on a wider range of topics, but have narrowed their requests in their reply brief.

campaigns over the past decade—does not relate to a legislative function.  In the context of

absolute legislative immunity

> [n]ot "everything a Member of Congress may regularly do is .
> . . a legislative act within the protection of the Speech or Debate
> Clause."   It follows that not everything an official with
> legislative duties does is protected by absolute immunity.  When
> an official possessing legislative responsibilities engages in
> official activities insufficiently connected with the legislative
> process to raise genuine concern that an inquiry into the motives
> underlying his actions will thwart his ability to perform his
> legislative duties vigorously, openly and forthrightly, he is not
> entitled to absolute immunity but only to the qualified immunity
> grounded in good faith that is bestowed upon other government
> officials.

*Minton*, 803 F.2d at 135 (footnotes omitted).   Topic (iii) concerns activities that are

insufficiently connected with the legislative process to entitle defendants to a legislative

privilege against testifying on that topic.   Accordingly, the court concludes that the

legislative privilege does not prevent plaintiffs from deposing Judge Jenkins or the County

Commissioners on topic (iii).

As plaintiffs explain the discovery they seek under topics (i), (ii), and (iv), however,

these areas of inquiry *do* relate to a legislative function.  These topics are derived from the

"totality of the circumstances" inquiry that the court must perform if plaintiffs meet the

threshold *Gingles*[9] test in relation to their VRA claim.[10]  But the evidence plaintiffs seek goes

---

[9]*Thornburg v. Gingles*, 478 U.S. 30 (1986).

[10]In a § 2 VRA case,

> [i]f a plaintiff meets the threshold *Gingles* test, the court must

- 10 -

beyond a simple § 2 inquiry, focusing instead on Judge Jenkins' and the County Commissioners' *subjective intent* in passing the 2011 Commissioners Court district map. Plaintiffs seek to discover whether Judge Jenkins and the County Commissioners had *knowledge* of the racial polarization of the Dallas electorate, whether they had *knowledge* of the success of plaintiffs' racial group in electing its preferred candidates over the last decade, and whether they had *knowledge* of the particularized needs of plaintiffs' racial community "while preparing and voting on the contested map." Ps. Reply 10. In other words, plaintiffs are seeking to discover whether any defendant had a discriminatory motive in passing the contested map. To the extent topics (i), (ii), and (iv) require that defendants reveal their motives in preparing and voting on the 2011 Commissioners Court district map, these topics relate to a legislative function. *See, e.g., Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) ("The holding of this Court . . . that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned.").

---

> then engage in a broader totality of the circumstances inquiry, considering whether the minority group has demonstrated that under the totality of the circumstances, its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Fabela v. City of Farmers Branch, Tex.*, 2012 WL 3135545, at *2-3 (N.D. Tex. Aug. 2, 2012) (Fitzwater, C.J.) (citation omitted). Factors the court may consider include, *inter alia*, "the extent to which voting in the elections of the state or political subdivision is racially polarized," "the extent to which members of the minority group have been elected to public office in the jurisdiction," and "whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group." *Id.* at *3 (citing *Brewer v. Ham*, 876 F.2d 448, 451 n.4 (5th Cir. 1989)).

Topic (v) seeks the meaning of, and factual predicate for, any public statements regarding the 2011 Commissioners Court district map.  Public statements *per se* have been held not to be legislative.  *See United States v. Brewster*, 408 U.S. 501, 512 (1972) (noting that "preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress . . . are political in nature rather than legislative" and do not have the protection afforded by the Speech or Debate clause).  But plaintiffs seek to question defendants regarding the meaning of, and factual predicate for, each of these statements.  To the extent this line of questioning would require defendants to reveal their motivations regarding the enactment of the 2011 Commissioners Court district map, the court concludes that this also potentially relates to a legislative function.

3

Having determined that topics (i), (ii), and (iv) (to the extent plaintiffs seek to discover defendants' motivations in preparing and voting on the 2011 Commissioners Court district map) and (v) (to the extent the information plaintiffs seek would require defendants to reveal their motivations regarding the enactment of the 2011 Commissioners Court district map), relate to a legislative function, the court next considers whether defendants can rely on the legislative privilege to refuse to answer questions on these topics.  Having reviewed the case law, the court concludes that, in the districting context, the balancing approach of *Perez* and *Veasey* is the one to follow when determining whether the legislative privilege precludes plaintiffs from deposing government officials on a particular topic.  In *Veasy* the court explained:

> On one hand, the importance of eliminating racial discrimination in voting—the bedrock of this country's democratic system of government—cannot be overstated. On the other hand, ensuring that legislators maintain the privilege of confidential communication with their aides, staff members, and other legislators in the discharge of their duties is vital to the legislative process. In seeking to strike the proper balance, this Court finds the five-factor analysis . . . to be the appropriate rubric for determining when the legislative privilege should give way to the need for disclosure in discovery.

*Veasey*, 2014 WL 1340077, at *2; *see also, e.g., Favors*, 285 F.R.D. at 214 (noting the "clear weight of authority holding that the legislative privilege is qualified and subject to a judicial balancing test"); *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *7. Accordingly, for the deposition topics that relate to a legislative function, the court will weigh the five *Perez* factors to determine whether the interests of the party seeking disclosure (here, plaintiffs) outweigh the interests of the party claiming the privilege (here, defendants). *See Perez*, 2014 WL 106927, at *2.

4

The court considers, together, topics (i), (ii), and (iv). The court concludes that *Perez* factors one and two weigh against allowing the discovery. To be sure, in deciding plaintiffs' VRA claim, the court can consider evidence of the racial polarization of the Dallas electorate, the success of plaintiffs' racial group in electing its preferred candidates over the last decade, and the degree of responsiveness on the part of elected officials to the particularized needs of the plaintiffs' racial community. *See, e.g., Fabela v. City of Farmers Branch, Tex.*, 2012 WL 3135545, at *3 (N.D. Tex. Aug. 2, 2012) (Fitzwater, C.J.). But to the extent plaintiffs

- 13 -

seek to discover defendants' *personal knowledge* regarding these topics, it is clearly established that an intent to discriminate on the part of individual legislators is not a required showing in connection with a VRA claim. *Thornburg v. Gingles*, 478 U.S. 30, 71 (1986) ("In amending § 2, Congress rejected the requirement . . . that § 2 plaintiffs must prove the discriminatory intent of state or local governments in adopting or maintaining the challenged electoral mechanism"); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 849 (5th Cir. 1993) ("Congress intended 'to make clear that proof of discriminatory intent is not required to establish a violation of Section 2.'" (citations omitted)).[11]  In other words, plaintiffs can prove their VRA claim without relying on the privileged information they seek in topics (i), (ii), and (iv).  Accordingly, the court concludes that defendants' personal knowledge regarding topics (i), (ii), and (iv) is not sufficiently relevant to weigh in favor of discovery.

Regarding factor two, plaintiffs can obtain evidence regarding the "totality of circumstances" factors from other sources.  For example, plaintiffs already have considerable information, including publicly available data and records, that they can rely on to establish

---

[11]As discussed in more detail below, *see infra* § III(C), "[p]roof of racially discriminatory intent or purpose *is* required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights*, 429 U.S. at 265 (emphasis added).  But plaintiffs do not argue that deposition topics (i), (ii), or (iv)—which are clearly derived from, and relate to, the "totality of the circumstances" inquiry that the court will perform in connection with plaintiffs' VRA claim, *see* Ps. Br. 12 (listing VRA factors and explaining that, "[a]ccordingly, the Plaintiffs seek to depose the Defendants concerning [those factors].")—are relevant to their equal protection claim, or that evidence of defendants' discriminatory intent is unavailable from other sources, such as the Angle Strategies documents that the court is ordering defendants to produce.

that members of the Commissioners Court were or were not responsive to their needs.  The court thus concludes that factors one and two weigh against disclosure.

The court concludes that factors three and four—the "seriousness" of the litigation and the issues involved and the role of the government in the litigation—weigh in favor of allowing the discovery.  In *Committee for a Fair & Balanced Map* the court explained:

> [t]here can be little doubt that plaintiffs' allegations are serious. Plaintiffs raise profound questions about the legitimacy of the redistricting process and the viability of the 2011 Map. Moreover, the legislators' role in the allegedly unlawful conduct is direct.  The General Assembly, through its members, aides and consultants, was primarily responsible for drafting, revising and approving the 2011 Map.  These actions are under scrutiny. This is not, then, "the usual 'deliberative process' case in which a private party challenges governmental action . . . and the government tries to prevent its decision-making process from being swept up unnecessarily into [the] public [domain]." Rather, "the decisionmaking process . . . [itself] *is* the case," at least to the extent that plaintiffs allege that the General Assembly intentionally discriminated against Latino and/or Republican voters.  The seriousness of the litigation and the role of Non-Parties militate in favor of disclosure.

*Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *8 (citations omitted).  Applying the reasoning of *Committee for a Fair & Balanced Map*, the court concludes that factors three and four weigh in favor of disclosure.

Regarding the fifth factor—the possibility of future timidity among government employees (here, legislators)—"courts have long recognized that the disclosure of confidential documents concerning intimate legislative activities should be avoided." *Veasey*, 2014 WL 1340077, at *3 (citation omitted).  The same rationale applies to compelled

- 15 -

testimony concerning legislative activities.  Accordingly, the court holds that the fifth factor weighs against disclosure.

The court concludes that the overall balance of factors weighs against compelling the depositions of Judge Jenkins and the County Commissioners regarding topics (i), (ii), and (iv).  Although the court finds that the litigation and issues involved are serious, and the government's role is direct, topics (i), (ii), and (iv) relate only to plaintiffs' VRA claim, *see supra* note 11, and defendants' personal knowledge regarding these topics is not sufficiently relevant, in the context of that claim, to weigh in favor of disclosure.  Accordingly, the court denies plaintiffs' motion to compel the depositions of Judge Jenkins and the County Commissioners to the extent plaintiffs seek deposition testimony on topics (i), (ii), and (iv) that is barred by the legislative privilege.

5

Regarding topic (v), plaintiffs seek the meaning of, and factual predicates for, the public statements made concerning the contested map, either by defendants or on their behalf.  But they do not point to any particular public statement for which they seek the meaning and factual predicate.  Without this information, the court cannot meaningfully assess the balancing test factors regarding topic (v).  Accordingly, the court denies plaintiffs' motion to compel the depositions of Judge Jenkins and the County Commissioners to the extent plaintiffs seek deposition testimony on topic (v) that is barred by the legislative privilege.

C

To the extent plaintiffs seek deposition testimony on topics (i)-(v) that is *not* barred by the legislative privilege, the court concludes that plaintiffs have failed to show that "exceptional" or "extraordinary" circumstances justify compelling the depositions of these high ranking government officials.

1

> It is a settled rule in this circuit that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted.  Top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.

*In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (internal quotation marks, brackets, and citations omitted); *see also Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action."); *In re United States* (*Kessler*), 985 F.2d 510, 512 (11th Cir. 1993) (per curiam) ("In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony"; high ranking government officials "should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); *In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." (quoting *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586

- 17 -

(D.C. Cir. 1985))).   "'[H]igh ranking government officials have greater duties and time constraints than other witnesses' and . . . without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Bogan*, 489 F.3d at 423 (quoting *In re United States* (*Kessler*), 985 F.2d at 512).   Furthermore, assuming the information in question is discoverable, "[i]f other persons can provide the information sought, discovery will not be permitted against such an official." *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (citing *In re United States* (*Kessler*), 985 F.2d at 513); *see In re FDIC*, 58 F.3d at 1062 ("We think it will be the rarest of cases . . . in which exceptional circumstances can be shown where the testimony is available from an alternate witness.").

2

In response to plaintiffs' motion, defendants maintain that the "apex doctrine" bars the requested depositions because Judge Jenkins and the County Commissioners are high-level officials, plaintiffs have failed to show that any of these officials has unique or superior personal knowledge of discoverable information, and there are less intrusive means by which the information plaintiffs are seeking can be obtained.[12]   Plaintiffs respond that the "apex

---

[12]In their brief, defendants rely on the "apex doctrine," which applies under Texas law to protect a corporate president or high-level corporate official from being deposed when he does not have any knowledge of relevant facts. *See Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995).   This court does not follow the "apex doctrine" as such. *See, e.g., Gaedeke Holdings VII, Ltd. v. Mills*, 2015 WL 3539658, at *3 (N.D. Tex. June 5, 2015) (Horan, J.).   But although defendants' use of the term "apex doctrine" is misplaced, their arguments are essentially correct.   They cite several federal cases setting forth *federal* law regarding the "exceptional" or "extraordinary" circumstances required for a party to compel a high-ranking government official to appear for a deposition.   Accordingly, the court will treat defendants' opposition to the depositions of Judge Jenkins and the County

doctrine" does not apply to their request to depose a representative of Dallas County because Dallas County will be able to choose its representative, and that the doctrine does not apply to Judge Jenkins or the County Commissioners because these defendants' knowledge regarding plaintiffs' deposition topics is unique or superior.

3

The court concludes that plaintiffs have not demonstrated that "exceptional" or "extraordinary" circumstances justify the depositions of Judge Jenkins or the County Commissioners.  Plaintiffs do not dispute that Judge Jenkins and the County Commissioners are high ranking government officials.  This is their entire response to defendants' argument on this point:

> given the accepted restrictions on the subject matter of the proposed depositions, above, the *Apex* doctrine has no relevance to the obligation to testify of the individual Defendants.  The Defendants explain the doctrine as excusing high-ranking officials from testifying on matters, unless their "knowledge of information sought [is] 'unique' or 'superior.'"  This exception to the doctrine applies to all the matters [on which] the Plaintiffs still seek to depose the individual Defendants[.]

Ps. Reply 14 (first alteration in original).  But the court has already concluded that, to the extent plaintiffs seek to discover what defendants knew specifically regarding topics (i), (ii), and (iv) at the time they prepared and voted on the contested map, such evidence is entitled to protection under the legislative privilege.  Plaintiffs do not offer any explanation for why defendants' knowledge is superior with regard to the portions of topics (i), (ii), and (iv) that

---

Commissioners as if based on applicable federal authority.

are *not* privileged (assuming that any portions of these topics are not privileged). Accordingly, the court holds that plaintiffs' conclusory assertion that defendants' knowledge is "unique" or "superior" is insufficient to establish that this case presents "exceptional" or "extraordinary" circumstances under which defendants' depositions should be compelled.

Regarding topic (iii)—defendants' conduct of their own political campaigns over the past decade—the court concludes that plaintiffs can obtain this information through less intrusive means than deposing Judge Jenkins and the County Commissioners. Defendants contend that they have produced items such as mailers and advertisements from their campaigns and that they will continue to produce more campaign advertisements if and when they are found. Moreover, as defendants point out, "the content and scope of circulated campaign advertisements can be discovered by less intrusive means such as through inquiry from campaign personnel, campaign consultants and mailer recipients in the community." Ds. Surreply 4. Accordingly, the court concludes that plaintiffs must seek information about defendants' political campaigns over the past decade through alternate, less intrusive means.

Regarding topic (iv)—Dallas County's responsiveness to the needs of plaintiffs' racial community, including its knowledge, if any, of that community's particularized needs—to the extent discovery on this topic is not barred by the legislative privilege, the court concludes that there are alternate, less intrusive means of discovering whether defendants have responded to the needs of plaintiffs' racial minority than deposing Judge Jenkins or the County Commissioners on this topic.

Finally, topic (v)—the meaning of, and factual predicate for, the public statements

made concerning the contested map by or on behalf of the Defendants—does not seek testimony regarding any particular public statement.  Nor do plaintiffs explain why some other person (for example, staff members charged with assisting Judge Jenkins and the County Commissioners in their public statements) cannot give testimony that would explain the meaning of, and factual predicate for, any public statement concerning the 2011 Commissioners Court district map.  In fact, this request is sufficiently amorphous that it does not satisfy the "exceptional" or "extraordinary" circumstances requirement for compelling the depositions of high-ranking officials.

In sum, plaintiffs have failed to show that any of their requested deposition topics meets the "exceptional" or "extraordinary" circumstances required for the court to compel Judge Jenkins or the County Commissioners, all high-ranking government officials, to submit to depositions in this case.  Accordingly, the court denies plaintiffs' motion to compel the depositions of Judge Jenkins and the County Commissioners.

## D

Plaintiffs also request that defendants produce a representative to testify on behalf of Dallas County.  As far as the court can determine, defendants have not presented any basis to deny this request.  Defendants' legislative immunity/privilege and "apex doctrine" arguments are all directed at Judge Jenkins and the County Commissioners, and defendants have not presented any argument for why the court should deny plaintiffs' motion to compel the deposition of a Dallas County representative.  Accordingly, the court grants plaintiffs' motion in this respect.

III

The court now turns to plaintiffs' motion to compel the production of the Angle Strategies Documents, which defendants have withheld on the basis of the attorney-client privilege, the work product protection, and the legislative and deliberative process privilege.

A

The court will address first whether the Angle Strategies Documents are privileged under the attorney-client privilege.

1

The attorney-client privilege exists to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).[13]  To achieve this goal, the privilege protects from disclosure "communications from the client to the attorney made in confidence for the purpose of obtaining legal advice." *Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985).  While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).  Hence, the privilege does not protect documents and other communications simply because they result

---

[13]Because plaintiffs bring their claims under federal law (the VRA and the Equal Protection Clause of the Constitution), the court applies federal, rather than state, law of privilege.  *See* Fed. R. Evid. 501; *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005).

from an attorney-client relationship.  *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) (Kaplan, J.).  Moreover, courts generally construe the privilege narrowly because "assertion of privileges inhibits the search for truth."  *Id.* (quoting *Perkins v. Gregg Cnty., Tex.*, 891 F.Supp. 361, 363 (E.D. Tex. 1995)).

2

Defendants contend that the Angle Strategies Documents fall into two categories: (1) email communications between Angle Strategies and defendants, and (2) email communications between Angle Strategies and redistricting counsel (who hired Angle Strategies).  They further explain:

> Angle Strategies, specifically Mr. Angle and his staff, were hired by legal counsel (not the Defendants) to not only assist counsel with technical assistance in the development of a new redistricting plan in compliance with federal and state law, but also to assist counsel in communicating with the individual members of Commissioners' Court (particularly when counsel was unable to do so directly).  Mr. Angle and his staff only undertook such activities at the specific direction of legal counsel and under counsel's direct supervision, which is precisely what the agreement between legal counsel and the Commissioners' Court provided.  Thus, Mr. Angle assisted counsel in his ability to provide legal counsel to the Defendants.

Ds. Br. 28.  On this basis, defendants maintain that the Angle Strategies Documents are entitled to protection under the attorney-client privilege.

In their reply, plaintiffs agree that the attorney-client privilege applies to "communications that 'enabled the attorney to give legal advice' between a party's lawyer and third-party non-lawyers like Angle Strategies," and they "welcome an in camera review

of the [Angle Strategies Documents] by the Court to remove any such documents from production." Ps. Reply 5. Plaintiffs also state that, "to the extent . . . specific [Angle Strategies Documents] relay legal advice to the Defendants that counsel merely asked Angle Strategies to pass along, the Plaintiffs do not ask the Court to compel the disclosure of such relayed communications," and again welcome "either the redaction of such relayed advice from the relevant [Angle Strategies Documents] before production or an in camera review of the [Angle Strategies Documents] to remove any documents that entirely relay such advice." *Id.* Plaintiffs seek production of the remaining Angle Strategies Documents, however, arguing that, aside from the appropriate "carve-outs," the attorney-client privilege does not apply. *Id.* at 6.

3

Because plaintiffs do not dispute that the attorney-client privilege applies to all communications between defendants' counsel and Angle Strategies that enabled defendants' counsel to give legal advice, the court will not compel the production of such communications. Nor will the court order the production of any documents that contain the communication of legal advice among defense counsel, Angle Strategies, and the members of the Commissioners Court. If the parties cannot agree as to which documents contain the communications described above (or whether otherwise privileged documents can be produced in redacted form), defendants must submit any disputed documents to the court for *in camera* inspection within 28 days of the date this memorandum opinion and order is filed.

Regarding the remaining Angle Strategies Documents—i.e., any Angle Strategies

Documents that are not covered by the preceding paragraph—the court concludes that defendants have not met their burden of establishing that the attorney-client privilege protects these documents from disclosure.

B

The court now turns to the federal work product protection.

1

The federal work product protection found in Rule 26(b)(3) provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial."  Rule 26(b)(3).  Materials prepared by a consultant are expressly covered by the work product protection.  *Id.*; *see also Thomas v. Gen. Motors Corp.*, 174 F.R.D. 386, 388 (E.D. Tex. 1997).  Determining whether a document is prepared in anticipation of litigation is a "slippery task."  *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).  A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection.  But "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation.  *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000); *United States v. Davis*, 636 F.2d 1028, 1039-40 (5th Cir. Unit A Feb. 1981).  As the advisory committee notes to Rule 26(b)(3) make clear, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."  Rule 26 advisory committee's note to 1970 amendment; *see also El Paso Co.*, 682 F.2d at

542.   Among the factors relevant to determining the primary motivation for creating a document are "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Navigant Consulting, Inc.*, 220 F.R.D. at 477 (quoting *Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653414 at *5 (E.D. Tex. Jul. 9, 2003)).  If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.  *Id.*

"Like all privileges, the work product doctrine must be strictly construed." *Mims v. Dall. Cnty.*, 230 F.R.D. 479, 484 (N.D. Tex. 2005) (Kaplan, J.) (citing cases).  The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial.  *Beasley v. First Am. Real Estate Info. Servs., Inc.*, 2005 WL 1017818, at *3 (N.D. Tex. Apr. 27, 2005) (Kaplan, J.); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400 (E.D. Tex. 2003).  Once this initial burden is met, a party seeking disclosure of ordinary work product[14]

---

[14]Ordinary work product includes materials "prepared in anticipation of litigation or for trial by or for another party or its representative." *See* Rule 26(b)(3)(A).  The party seeking discovery must "show[] that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See id.* at 26(b)(3)(A)(ii).  Opinion work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *See id.* at 26(b)(3)(B).  The party seeking discovery must demonstrate "a compelling need for the information." *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (Ramirez, J.) (citing *Varel v. Banc One Capital Partners, Inc.*, 1997 WL 86457, at *5 (N.D. Tex. Feb. 25, 1997) (Boyle, J.)); *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693

must demonstrate both "a substantial need for the information *and* an inability to obtain the substantial equivalent without undue hardship." *SEC v. Brady,* 238 F.R.D. 429, 443 (N.D. Tex. 2006) (Ramirez, J.) (emphasis added); Rule 26(b)(3)(A)(ii) (providing that party ordinarily may not discover documents and tangible things prepared in anticipation of litigation or for trial by or for another party or its representative, but, subject to Rule 26(b)(4), "those materials may be discovered if . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").

2

Defendants include references to the "attorney-work product privilege" in their response to plaintiffs' motion to compel, but they do not support these references with any argument as to why the work product protection applies to any of the Angle Strategies Documents.  Accordingly, to the extent defendants intend to rely on the work product protection, the court concludes they have not met their burden of establishing that this protection applies.

C

Finally, defendants assert that the legislative privilege and deliberative process privilege apply to the Angle Strategies Documents.

---

F.2d 1235, 1240 (5th Cir. 1982) (requiring "higher showing" for opinion work product and noting that "[s]ome courts have [even] provided an almost absolute protection for such materials").

1

The Supreme Court has recognized a deliberative process privilege covering "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).  "The purpose of the privilege is to protect the decision-making process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations might have on 'the "frank discussion of legal or policy matters" in writing.'" *Skelton v. U.S. Postal Serv*., 678 F.2d 35, 38 (5th Cir. 1982) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 150) (discussing statutorily created deliberative process privilege in Freedom of Information Act).  "The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citations omitted); *see also Norwood v. F.A.A.*, 993 F.2d 570, 577 (6th Cir. 1993) ("'[P]urely factual, investigative matters' that are 'severable without compromising the private remainder of the documents' do not enjoy the protection of the exemption." (citation omitted)).  Courts generally agree that the deliberative process privilege "protects only documents which are pre-decisional, deliberative and reflect the subjective intent of the legislators." *Doe v. Nebraska*, 788 F.Supp.2d 975, 985 (D. Neb. 2011) (citing cases).

As with the legislative privilege, courts have held that the deliberative process privilege is qualified and can be overcome "by a sufficient showing of need." *In re Sealed Case*, 121 F.3d at 737 (footnote omitted); *see also Doe v. City of San Antonio*, 2014 WL 6390890, at *2 (W.D. Tex. Nov. 17, 2014) ("Courts consider any number of factors when determining if the deliberative process privilege ultimately protects the information sought."); *Favors*, 285 F.R.D. at 210 n.22 ("Like the legislative privilege, the deliberative process privilege is a 'qualified privilege which may be overcome upon a showing that the adverse party's need for disclosure outweighs the interest in confidentiality.'" (quoting *Rodriguez v. Pataki*, 280 F.Supp.2d 89, 98 (S.D.N.Y. 2003))).  Similar to the legislative privilege, the court must balance the competing interests, taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees.  *In re Sealed Case*, 121 F.3d at 737-38; *Doe*, 788 F.Supp.2d at 985 ("Courts evaluating whether to apply the deliberative process privilege generally treat it as a qualified privilege and only protect documents from discovery after applying a balancing test based on the following factors: '(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" (citations omitted)).

2

Defendants clarify in their surreply that the legislative privilege

> does not apply to Mr. Angle, it applies to the Defendants. As such, any documents or correspondence *from* [Judge Jenkins] or [the County] Commissioners or their staff, *to* Mr. Angle or his staff are protected by the privilege. As such, Defendants do not rely on this privilege as it relates to Mr. Angle's communications *to* Defendants and did not include the assertion of such a privilege in the log for that specific type of communication[]. Again, it applies to the Defendants as Commissioners and County Judge, and their staff, in sending privileged communications *to* counsel and Angle Strategies.

Ds. Surreply 9-10.

To the extent defendants assert that the legislative or deliberative process privilege applies to communications *from* Judge Jenkins or the County Commissioners *to* Angle Strategies or defense counsel,[15] the court will assume *arguendo* that defendants have met their burden of establishing that the communications were both pre-decisional and deliberative (for purposes of the deliberative process privilege) and that they relate to a legislative function (for purposes of the legislative privilege). Accordingly, the court considers whether plaintiffs have made a sufficient showing—as is required for both the deliberative process privilege and the legislative privilege—that their need for the Angle Strategies Documents outweighs the government's interest in non-disclosure.

---

[15]Because defendants have limited their assertion of the legislative privilege as explained in their surreply, the court will not address whether the privilege would also apply to communications in the opposite direction (i.e., *from* Angle Strategies or defendants' counsel *to* Judge Jenkins or the County Commissioners).

3

The court concludes that the communications plaintiffs seek are relevant.[16]  In addition

to their VRA claim, plaintiffs bring a claim under the Equal Protection Clause based on

allegations of vote dilution and racial gerrymandering.  The essence of a vote dilution claim

under the Fourteenth Amendment is "that the State has enacted a particular voting scheme

as a purposeful device 'to minimize or cancel out the voting potential of racial or ethnic

minorities.'" *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (citation omitted).  To obtain relief

on a constitutional vote dilution claim, plaintiffs must "prove that the purpose and operative

effect" of the challenged election scheme "is to dilute the voting strength of [minority]

citizens."  *Voter Info. Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 212 (5th Cir.

1980).[17]

---

[16]Although plaintiffs argue these factors in the context of the legislative privilege, their arguments apply with equal force in the context of the deliberative process privilege.

[17]Discriminatory purpose may be inferred from the "totality of the relevant facts," including "circumstantial indicia of discriminatory purpose" such as:

> (1) whether bloc voting along racial lines exists; (2) whether minorities are excluded from the political process; (3) whether minority voter registration is low; (4) whether elected officials are unresponsive to the needs of minorities; (5) whether the minority group occupies a depressed socioeconomic status because of inferior education or employment and housing discrimination; (6) the historical backdrop leading to the passage of the redistricting legislation; (7) "the specific sequence of events leading up to the challenged decision"; (8) whether the redistricting body departed from the normal procedural sequence for passing redistricting legislation; (9) whether the voting strength of a cohesive minority group has decreased or

Racial gerrymandering of electoral districts involves the "deliberate and arbitrary distortion of district boundaries . . . for [racial] purposes." *Shaw v. Reno*, 509 U.S. 630, 640 (1993) (alteration in original); *see also Prejean v. Foster*, 227 F.3d 504, 509 (5th Cir. 2000). "Given the presumption of the legislature's good faith in redistricting, showing that a redistricting plan intentionally discriminates is not ordinarily an easy task." *Prejean*, 227 F.3d at 509 (footnote omitted). The trial court "must 'perform a sensitive inquiry into such circumstantial and direct evidence as may be available.'" *Id.* (internal quotation marks omitted) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999)). It is the plaintiff's burden to "show that traditional districting principles were subordinated to race, i.e., that race was 'the predominant factor motivating the legislature's redistricting decision.'" *Id.* (brackets omitted) (quoting *Miller*, 515 U.S. at 916).

In support of their motion to compel the Angle Strategies Documents, plaintiffs contend that they

> have alleged that the Defendants were predominantly motivated by race when they created the contested map at issue in this litigation; that they intentionally targeted a racial minority for vote-dilution through that map; and that they did so at the expense of better adherence to traditional, non-racial redistricting factors. Angle Strategies was brought onto the

---

> "retrogressed"; and (10) whether district boundaries have been manipulated to adjust the relative size of minority groups, including instances of "packing."

*Rodriguez v. Harris Cnty., Tex.*, 964 F.Supp.2d 686, 800-01 (S.D. Tex. 2013) (quoting *Backus v. South Carolina*, 875 F.Supp.2d 553, 558 (D.S.D. 2012)).

> Defendants' "team" expressly to supply "expertise in GIS (geographic information systems) and map drawing capabilities, Dallas County geography, demographic and election analysis, and public communications[.]"  Accordingly, the Defendants' communications with Angle Strategies concerning what map to draw and how to manipulate demographic factors in creating that map lie at the factual core of this litigation.

Ps. Br. 9-10 (footnotes omitted).  The court agrees that defendants' communications with Angle Strategies concerning what map to draw and how to manipulate demographic factors in creating that map are relevant to plaintiffs' equal protection claim, especially insofar as these communications would tend to prove or disprove defendants' motivations in creating the allegedly discriminating map, and that the first *Perez* factor thus weighs in favor of disclosure.  The court also concludes, for the same reasons explained above, *see supra* § II(B)(4), that the seriousness of the litigation and the role of the government weigh in favor of disclosure.  Regarding the availability of information from other sources, it is unclear whether the information plaintiffs seek is or is not available from other sources. Accordingly, this factor does not weigh for or against disclosure.  Finally, regarding the last factor, as explained above, "courts have long recognized that the disclosure of confidential documents concerning intimate legislative activities should be avoided."  *Veasey*, 2014 WL 1340077, at *3 (citation omitted).  Accordingly, this factor weighs against disclosure.

Considering all of the factors and weighing plaintiffs' need for the documents against the government's interest in non-disclosure, the court concludes that, despite the privileged nature of the Angle Strategies Documents, plaintiffs have made a sufficient showing of need. Although defendants vigorously object to the compelled depositions of Judge Jenkins and

the County Commissioners, they fail to address the five factors in the context of the Angle Strategies Documents.  Moreover, the sound policy reasons against compelling depositions of high ranking officials do not apply with equal force to the compelled production of documents.  This is especially true when the documents have central relevance to plaintiffs' equal protection claim and there is no suggestion that plaintiffs could obtain the information the documents contain from other sources.  Accordingly, considering all of the factors and weighing the totality of circumstances, the court concludes that, despite the privileged nature of the Angle Strategies Documents, plaintiffs have made a sufficient showing of need.[18]

D

In sum, the court denies plaintiffs' motion to compel production of the Angle Strategies Documents to the extent plaintiffs agree that the documents are protected under the attorney-client privilege (i.e., the Angle Strategies Documents that contain communications that enabled defendants' counsel to give legal advice, and that "relay legal advice," Ps. Reply 5).  The court otherwise grants the motion.

---

[18]Plaintiffs argue in reply that, because defendants did not include the deliberative process privilege on their privilege logs or in response to plaintiffs' discovery requests, the court should refuse to consider whether the privilege applies to *any* of the Angle Strategies Documents.  Because the court concludes that plaintiffs have made a sufficient showing of need to overcome the qualified deliberative process privilege, it will not address whether defendants' failure to assert this privilege on their privilege logs or in response to plaintiffs' discovery requests waives the privilege.

*   *   *

For the foregoing reasons, the court denies plaintiffs' motion to compel the depositions of Judge Jenkins and the County Commissioners, grants plaintiffs' motion to compel the deposition of a representative of Dallas County, and grants in part and denies in part plaintiffs' motion to compel the production of the Angle Strategies Documents.  The court directs the parties to confer and attempt in good faith to agree on the timing of the deposition and document discovery compelled under this memorandum opinion and order.  Absent agreement, and after meeting and conferring on a proposed motion, a party may seek relief from the court.

**SO ORDERED**.

December 23, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 35 -