UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANNE HARDING, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| COUNTY OF DALLAS, TEXAS, | § | |
| et al., | § | C.A. NO. 3:15-CV-00131-D |
| | § | |
| Defendants. | § | |
| | § | |

---

DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR DISQUALIFICATION OF J. GERALD HEBERT AND REPLY TO PLAINTIFFS' OBJECTION TO MOTION FOR PROTECTIVE ORDER

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................................ii

INTRODUCTION..........................................................................................................1

ARGUMENT.................................................................................................................3

   I.  Disqualification is Unwarranted Because Mr. Hebert's Testimony is Not
      Necessary to Establish Any Material Fact. ........................................................3

   II. Plaintiffs' Motion is Untimely. ........................................................................13

   III.Defendants Would Be Prejudiced by Mr. Hebert's Disqualification. ..............17

   IV.The Expenses Sought in Defendants' Motion for a Protective Order Are
      Appropriate. .....................................................................................................19

CONCLUSION............................................................................................................21

i

# TABLE OF AUTHORITIES

## CASES

*Andra Grp., LP v. JDA Software Grp., Inc.,*
    312 F.R.D. 444 (N.D. Tex. 2015) ................................................................. 15-16

*Bonnecaze v. Ezra & Sons, LLC,*
    No. 14-1774, 2016 WL 2820188 at *2 (E.D. La. 2016).......................................... 3

*Hernandez v. Frazier,*
    No. SA -11-CA-9-FB, 2011 WL 13136191, at *5 (W.D. Tex. 2011) ...................... 4

*Horaist v. Doctor's Hosp. of Opelousas,*
    255 F.3d 261 (5th Cir. 2001)............................................................................ 3, 10

*In re Duke Investments, Ltd.,*
    454 B.R. 414 (Bankr. S.D. Tex. 2011)................................................................ 4, 9

*K.R. ex rel. Doe v. Clarity Child Guidance Ctr.,*
    4 F. Supp. 3d 856 (W.D. Tex. 2014) ............................................................... 4, 12

*Miller v. Johnson,*
    515 U.S. 900, 911.................................................................................................... 8

*Perez v. Abbott,*
    253 F. Supp. 3d 864 (W.D. Tex. 2017) ................................................................. 8

*Shelby County v. Holder,*
    133 S. Ct. 2612 (2013) ......................................................................................... 6

## FEDERAL STATUTES

28 U.S.C. § 1927 ....................................................................................................... 20

## FEDERAL RULES

Fed. R. Civ. P. 34(b)(1) ............................................................................................ 15

## OTHER AUTHORITIES

*State of Texas v. United States*,
No. 11-1303 (RMC), Memorandum Opinion, March 30, 2017 ......................... 18

Dallas County, Videos of Recent Court Meetings
http://www.dallascounty.org/government/comcrt/videos.php# ........................ 14

Defendants hereby submit this Brief in Opposition to Plaintiffs' Cross-Motion with supporting brief to disqualify counsel for Defendants, Mr. J. Gerald Hebert, "from Taking an Active Role Before the Court in This Matter[.]" Pls.' Br. at 1. Defendants also submit this in reply to Plaintiffs' Objection to Defendants' Motion for a Protective Order.[1]

## INTRODUCTION

Plaintiffs' radical effort to disqualify Mr. Hebert from speaking in the courtroom is completely without merit and untethered to any rule or case law. Although their exact legal arguments are difficult to identify, Plaintiffs appear to contend that because Mr. Hebert, who was charged with providing legal advice to the Commissioner's Court, publicly explained the necessity of complying with Sections 2 and 5 of the Voting Rights Act, he must no longer speak in court because *Plaintiffs* assert a counter-intuitive "interpretation" of these public statements—that they *really* communicate an intent to discriminate against Anglo voters and to improperly sort voters based upon race. Plaintiffs' motion fails for a number of reasons explained below.

But more broadly, plaintiffs' motion, if granted, would have far-reaching and

---

[1] Plaintiffs' "Objection" merely references the brief filed by Plaintiffs on these issues and makes no new or additional points to those made in Plaintiffs' brief.

1

damaging results.  Local and state governments, city councils, county commissioner courts, and other governmental bodies routinely rely upon in-house and retained counsel to both advise them on the legality of proposed policies and to defend those policies against legal challenges.  For example, the Texas Attorney General's Office advises the legislature, its committees, and its leaders about their legal requirements in redistricting, and those same attorneys then defend the State in court against challenges to the enacted redistricting plans.  The Attorney General's office testifies in committee hearings about the legality of legislative proposals, and then defends the State against any legal challenges to those laws.  Municipal attorneys publicly advise local governments at public meetings, or in private, about proposed ordinances.  And many localities can at most afford to pay a single staff attorney.

If Plaintiffs' gambit here succeeds, a raft of disqualification motions will be filed against any government attorney who fulfills both roles in his or her job description— advising governmental clients of their legal obligations, and later defending governmental clients in court.  This is not what the ethics rules require.  For this and other reasons described below, Plaintiffs' motion is sorely misplaced and must be denied.

## ARGUMENT

### I.   Disqualification is Unwarranted Because Mr. Hebert's Testimony is Not Necessary to Establish Any Material Fact.

Plaintiffs have not satisfied their burden to show that any of the factors requiring disqualification are present here.  Mr. Hebert is not a necessary witness to any of Plaintiffs' claims, and any testimony he would provide is cumulative of other sources.

A lawyer may be disqualified if he is a necessary witness.  *See, e.g., Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).  But disqualification is an extreme action that robs a party of its chosen counsel.  Thus "the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary."  *Bonnecaze v. Ezra & Sons, LLC*, No. 14-1774, 2016 WL 2820188, at *2 (E.D. La. May 13, 2016).  When "a lawyer discovers during litigation that he may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony would prejudice his client."  *Horaist*, 255 F.3d at 266 (internal quotation marks omitted).  "Testimony is considered prejudicial . . . if it is so adverse to the client's side that the bar or the client might have an interest in discrediting the testimony, and the movant has the burden of establishing prejudice with specificity."  *Id.* at 267 (internal quotation marks omitted).

A lawyer is not a necessary witness if the testimony is available from another

3

source; "the movant must explain why other sources revealed in the record such as the testimony of other witnesses or other pertinent records in evidence, are insufficient." *Hernandez v. Frazier*, No. SA-11-CA-9-FB, 2011 WL 13136191, at *5 (W.D. Tex. 2011) (internal quotation marks omitted). And "[i]f a lawyer's testimony is capable of corroboration by another witness, or merely cumulative, it is unlikely that the lawyer's testimony will be considered necessary." *Id.* A lawyer cannot be disqualified if "most information would be privileged," *K.R. ex rel. Doe v. Clarity Child Guidance Ctr.*, 4 F. Supp. 3d 856, 858 (W.D. Tex. 2014), and the movant "must affirmatively and unequivocally state his intention to call the attorney as a witness," *In re Duke Investments, Ltd.*, 454 B.R. 414, 423 (Bankr. S.D. Tex. 2011) (internal quotation marks omitted). Plaintiffs' contention that Mr. Hebert is a necessary witness, and thus must be muzzled and prohibited from speaking in the courtroom, fails for a host of reasons.

*First*, Plaintiffs have not met their burden for disqualification because Plaintiffs have not even told this Court—or Defendants—which of Mr. Hebert's public statements they contend preclude his continued role as a "speaking" attorney. Nowhere in their motion or Appendix do they provide the Court—or Defendants—with quotations from the transcript from which to assess the relevance of Mr. Hebert's statements, how they make him a necessary witness, why they do not suffice in themselves as evidence absent any additional testimony, or how Mr. Hebert's

4

continued participation (or prior public statements) might prejudice his clients (or anyone else, for that matter).   Instead, Plaintiffs provide only their own vague characterization and "understanding," Pls.' Br. at 15, that these undisclosed statements show the redistricting plan "was drawn with race as its predominant factor and with the express intent to fragment Dallas's Anglo minority."  Pls.' Br. at 7-8.[2] This is hardly sufficient to satisfy Plaintiffs' heavy burden to prove Mr. Hebert must be disqualified as a necessary witness.  It is not even sufficient to notify Defendants of what it is, exactly, they are supposed to be responding to here.  This alone requires denial of Plaintiffs' motion.

Nonetheless, Defendants attach hereto a transcript of Mr. Hebert's remarks at the May 21, 2011 hearing—their best guess as to what Plaintiffs might be referring to. At that hearing, Mr. Hebert explained to the Defendants County Commissioners that a priority was complying with Sections 2 and 5 of the Voting Rights Act, App. at 24, and that "[r]acial considerations have not played any predominant or driving force role in the creation of the districts except insofar as we have attempted to avoid

---

[2] Plaintiffs incorrectly claim that Mr. Hebert participated in the drawing of the redistricting plan. Pls.' Br. at 7.   He did no such thing.   He merely gave legal advice to his clients and to the expert consultant he retained to actually draw the map (a fact Plaintiffs seem to acknowledge in the very same paragraph.  *See id.*). This is similar to the role typically played by Attorneys General across the country when they speak at a legislative hearing and advise state officials what the law requires and how the plan needs to meet those requirements.

retrogression. . . .  I say that because, while we have taken race into account to ensure we did not violate the Voting Rights Act, we have not let race drive this process, and none of you have in giving me feedback as to how the districts should be configured." *Id.* at 31.[3]

From that, apparently, Plaintiffs claim that Mr. Hebert was *really communicating* that race predominated in the consideration of the line drawing and that it was done "with the express intent to fragment Dallas's Anglo minority."  Pls.' Br. at 7-8.  This makes absolutely no sense.  Mr. Hebert's public statements are the exact opposite of what Plaintiffs vaguely allude in their motion.  Plaintiffs appear to be arguing that because <u>they</u> "interpret" these statements to mean the *exact opposite of their face value meaning*, Mr. Hebert must be disqualified because his client will surely dispute their (backwards) interpretation.  *See* Pls.' Br. at 8.  This is absurd.  A party cannot simply assert that black is white and up is down, and then obtain disqualification of his opposing party's attorney because his gross mischaracterization of that attorney's

---

[3] At an earlier hearing, on May 10, 2011, Mr. Hebert outlined the requirements of Section 5 of the Voting Rights Act, which was in effect at that time, prior to the Supreme Court's decision in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013).  Under Section 5, Mr. Hebert explained that the new map could not cause retrogression in minorities' ability to elect their candidates of choice.  At the May 17, 2011 hearing, Mr. Hebert indicated that the new map avoided retrogression by maintaining one district that would continue to permit African American voters to elect their candidate of choice, and one district that would permit Latino voters to elect their candidate of choice.  These statements relayed the requirements of Section 5 of the Voting Rights Act, and Mr. Hebert's understanding thereof.

statement must necessarily be disputed.

*Second*, even if one suspends reality and concludes that Mr. Hebert's statements mean the opposite of what they say and pretend for a moment that they indicate that race was the predominant redistricting criterion, he still cannot possibly be a "necessary witness" to any "material fact" because Plaintiffs' live complaint <u>does not allege a racial gerrymandering/*Shaw* claim.</u> Plaintiffs' Second Amended Complaint states three causes of action: (1) that Section 2 of the Voting Rights Act requires two Anglo districts, (2) that the plan constitutes intentional vote dilution through cracking and packing in violation of the Fourteenth Amendment, and (3) that to the extent the Court concludes that Section 2 of the Voting Rights Act does not protect Anglos, the Voting Rights Act is a violation of the Fourteenth Amendment. *See* Second Am. Compl. ¶¶ 25-33, ECF No. 31. Nowhere in the Complaints' "Claims for Relief" does Plaintiff mention "racial gerrymandering" or "*Shaw v. Reno*." Rather, Plaintiffs' Fourteenth Amendment claim is presented exclusively as an intentional vote dilution claim, complaining that it allegedly "purposefully fragment[s] Dallas's Anglos . . . [and thus is] designed . . . to reduce and less[e]n Dallas's Anglos' electoral opportunities significantly below the level of opportunities that would have been available under a map compliant with neutral principles." Second Am. Compl. ¶ 31.

The Court should not permit disqualification of counsel for alleged statements

that relate to a claim Plaintiffs have not even pleaded. As the Supreme Court has made

clear, a racial gerrymandering/*Shaw* claim is

> analytically distinct from a vote dilution claim.  Whereas a vote dilution
> claim alleges that the [government] has enacted a particular voting
> scheme as a purposeful device to minimize or cancel out the voting
> potential of racial or ethnic minorities, an action disadvantaging voters
> of a particular race, the essence of the equal protection claim recognized
> in *Shaw* is that the [government] has used race as a basis for separating
> voters into districts.

*Miller v. Johnson*, 515 U.S. 900, 911 (internal quotation marks and citations omitted).

The three-judge district court considering Texas's congressional and state house

redistricting plans recently concluded that several plaintiffs' complaints failed to state

racial gerrymandering/*Shaw* claims because their complaints likewise framed their

Fourteenth Amendment claims solely as vote dilution claims, as Plaintiffs have done

here, and not as racial gerrymandering/*Shaw* claims.  *See Perez v. Abbott*, 253 F. Supp.

3d 864, 932 (W.D. Tex. 2017).  There, the court explained that the plaintiff did not

properly raise a *Shaw* claim because "the racial gerrymandering language was omitted

from their live complaint . . . .  The Fourteenth Amendment claims are couched only

in terms of intentional discrimination and vote dilution."  *Id.*  The same is true here.

Because Plaintiffs' "live Complaint . . . does not assert an obvious *Shaw*-type claim,"

*id.*, Mr. Hebert's statements about whether race predominated are irrelevant.  His

testimony cannot be "necessary" to proving a material fact of a legal claim Plaintiffs

8

have not properly alleged.

*Third*, Mr. Hebert is not a necessary witness <u>because Plaintiffs have expressly</u> <u>disclaimed any intent to call him as a witness.</u>  *See, e.g.* Pls.' Br. at 13.  Rather, they instead ask this Court to either: 1) gag him from speaking in court (though apparently they think he is still permitted to draft written pleadings), *see* Pls.' Br. at 15; or 2) if he does speak, force Defendants to forego disputing Plaintiffs' counter-factual "interpretation" of Mr. Hebert's public statements—which on their face mean the exact opposite of what Plaintiffs contend.  This is improper.  Because Plaintiffs have *disclaimed any intent to call Mr. Hebert as a witness*, he is not a "necessary" witness.  *See In re Duke Investments, Ltd.*, 454 B.R. at 423 (noting that the movant "must affirmatively and unequivocally state his intention to call the attorney as a witness" (internal quotation marks omitted)).[4]

---

[4] As noted above, Plaintiffs have expressly agreed not to call Mr. Hebert as a witness. As noted in the motion for a protective order, counsel for Plaintiffs and Defendants conferred by phone and email in September about the issue of whether Plaintiffs intended to call Defendants' counsel as fact witnesses.  An agreement was struck that seemingly resolved the issue, with counsel for Plaintiffs making clear that he did not intend to call either counsel (Mr. Rios or Mr. Hebert) as fact witnesses. At the time of that agreement, Plaintiffs made no mention of seeking to disqualify Mr. Hebert. Nowhere do plaintiffs dispute the facts set forth in Defendants' motion for a protective order that an agreement was reached that Plaintiffs would not call Mr. Hebert as a fact witness.  Nor do Plaintiffs dispute that Defendants' counsel made clear in that exchange that Defendants too had no such intention to call counsel as a witness.  Defendants' counsel went even further, stating that Defendants stood by any statements that legal counsel had made at public redistricting hearings in 2011 and would stipulate to their authenticity and admissibility as statements contained in the public record.  Plaintiffs not only fail to dispute the substance of that agreement and exchange in the emails attached to Defendants' Motion for a Protective Order, they fail to mention it all in their briefing.

*Fourth*, Plaintiffs have not shown how *anybody*—let alone Mr. Hebert's clients—would be prejudiced by his speaking in the courtroom.  His public comments during the redistricting process were that he prioritized compliance with the Sections 2 and 5 of the Voting Rights Act and that race *was not* a predominant or driving consideration in drawing lines.  Plaintiffs offer no conceivable argument, let alone one stated with "specificity," *Horaist*, 255 F.3d at 267, for how Mr. Hebert's statements about seeking to comply with federal law are "so adverse to the client's side that the bar or the client might have an interest in discrediting the testimony," *id.* (internal quotation marks omitted).  Indeed, the plain meaning of Mr. Hebert's statements *support Defendants' position.*

Plaintiffs apparently believe that statements by counsel to the effect that Defendants' redistricting plan had to take race into account in order to maintain two effective minority opportunity districts in order to avoid retrogression under the Voting Rights Act is proof of intentional discrimination against Anglos.  Plaintiffs state that Mr. Hebert's statements that the plan needed to maintain two majority-minority districts to comply with the Voting Rights Act show that that Dallas redistricting plan "was drawn with race as its predominant factor and with the express intent to fragment Dallas's Anglo minority community between districts sufficiently to assure that they could elect no more than one (1) Commissioner to the Dallas

10

County Commissioners Court." Pls.' Br. at 7-8. While Defendants disagree with Plaintiffs' interpretation and characterization of the remarks, they are free to offer them and, as noted above, Defendants have stipulated to their admissibility as statements contained in the public record.[5]

At the end of the day, it doesn't matter whether Mr. Hebert's legal advice was correct or incorrect regarding whether the County was legally obligated under the Voting Rights Act to maintain two effective minority opportunity districts, such statements would not harm Plaintiffs. Indeed, Plaintiffs claim that Mr. Hebert's remarks help their case since they take the view that the intentional creation or maintenance of an effective majority Latino and an effective majority African-American district is evidence that the plan was drawn with discriminatory intent against whites. While Plaintiffs' assertions of that position is plainly wrong as a matter of law, nothing in Mr. Hebert's public statements on those issues harm Plaintiffs in any way in making their arguments. Put differently, Mr. Hebert's statements that the redistricting plan needed to maintain two effective minority opportunity districts to comply with the Voting Rights Act cannot plausibly be a central or material issue for

---

[5] Plaintiffs further note that Mr. Angle has acknowledged in his deposition testimony that he was instructed to create an African-American opportunity district and a Latino opportunity district in order to comply with the provisions of the Voting Rights Act. Thus, to the extent that plaintiffs believe those statements are "a material issue in contention," they already have statements made by counsel and Mr. Angle to that effect.

11

the Plaintiffs in a case where they contend that the plan <u>violates</u> the Voting Rights Act.

*Fifth*, Mr. Hebert is not a necessary witness because his public statements at the redistricting hearing are admissible evidence that speak for themselves, and any *testimony* by Mr. Hebert would be duplicative of the public record statements. Thus, even if Plaintiffs had not already disclaimed any intent to call Mr. Hebert as a witness, any attempt to do so would be unnecessary and cumulative of the existing public record. Indeed, throughout their motion, Plaintiffs state they intend to rely upon the statements Mr. Hebert made at the Commissioner Court's hearings. *See* Pls.' Br. at 2, 8. That is fine—Defendants have already acknowledged they may do so and that the statements are admissible and authentic. But Plaintiffs' intent to do so proves how Mr. Hebert is not a *necessary witness* at trial—any testimony Plaintiffs might seek to elicit from Mr. Hebert would either be duplicative of his public record statements or would be privileged. *See Clarity Child Guidance Ctr.*, 4 F. Supp. 3d at 858. Because Plaintiffs can obtain the information they seek from the public record, rather than through Mr. Hebert's trial testimony, they have failed to meet their burden to show his testimony is necessary.[6]

---

[6] This underscores the oddity—and confusing nature—of Plaintiffs' disqualification motion. Their only stated argument is based upon the Lawyer as Witness rule, but they have disclaimed any intent to call Mr. Hebert as a trial witness. Indeed, they have affirmatively stated that his public hearing

## II.     Plaintiffs' Motion is Untimely.

Although Plaintiffs' motion can and should be rejected on the merits, it should also be rejected outright as untimely. Three years have passed since this case was filed. For *three years* Plaintiffs have known of Mr. Hebert's active participation in this litigation as counsel for Defendants. For *six years* it has been public information that Mr. Hebert served as counsel for Dallas County during the redistricting process. Indeed, <u>Plaintiffs</u>' initial Rule 26 disclosures in the case ***filed in June 2015*** listed Defendants' counsel (Messrs. Hebert and Rios) as persons Plaintiffs claimed had knowledge of the facts relevant to this litigation. *See* Appendix to Plaintiffs' Pls.' Br. at Ex. A. Despite their knowledge at the time of their own disclosures, Plaintiffs waited over two years after serving their Rule 26 disclosures, three years after the case was filed, and six years after becoming aware Mr. Hebert had served as redistricting counsel in 2011, to spring the threat of disqualification—without even the courtesy of a phone call prior to Mr. Hebert's flight from Washington, D.C. to Texas to take a deposition—upon Defendants at the start of a deposition at the end of the discovery

---

statements are all they need, and that they "will rely on Mr. Hebert's 'admissions.'" Pls.'s Br. at 2. This alone (like everything else discussed herein) defeats Plaintiffs' motion because they admit they can obtain all they need from another source—the public record. It thus appears that Plaintiffs merely wish to take the Lawyer as Witness rule out of context, ignore all its particulars, and use it to either: 1) gag Mr. Hebert from speaking in the courtroom as a lawyer, so that Defendants cannot have the benefit of the nationally recognized Voting Rights lawyer they retained, or 2) require everyone to accept as true their nonsensical, counter-factual "interpretation" of Mr. Hebert's public remarks. The relief they request is entirely divorced from the rule upon which they base their motion, and they cite no law or rule or case that grants what they seek.

period. Worse still, this gambit was pulled more than a month after counsel had agreed by e-mail that Messrs. Hebert and Rios would not be called as witnesses in this case, reasonably and fully resolving this issue. This hide-and-wait, spring-it-at-the-last-minute strategy is inexcusable and reveals the motion for what it is, a litigation game. This alone requires the outright denial of plaintiffs' motion.

Plaintiffs offer no reasonable justification for their inexcusable delay and surprise retreat from their prior agreement with Defendants' counsel. In their motion, Plaintiffs' only proffered excuse for their delay is that they were unaware of the extent[7] of Mr. Hebert's public statements during the public redistricting hearings because they claim they had no access to the recordings of those hearings until Defendants produced them as part of discovery in August 2017. Pls.' Br. at 12. This is inaccurate. First, nearly all of the recordings have been available on the County's website during the entire time this litigation has been pending.[8] Indeed, it appears that Plaintiffs' counsel not only had access to those publicly posted videos long before "mid-August 2017," as they incorrectly claim in their motion, Pls.' Br. at 12, but had actually in fact *viewed* those publicly posted videos *years* ago. The reason we know this is because Plaintiffs' Second Amended Complaint quotes extensively from the June 7,

---

[7] Plaintiffs seriously exaggerate the "extent" of Mr. Hebert's public statements.

[8] *See* Dallas County, Videos of Recent Court Meetings, http://www.dallascounty.org/government/comcrt/videos.php#.

2011 hearing—quotes presumably obtained from the video posted on the county website. *See, e.g.*, Second Am. Compl. ¶¶ 18-19, ECF No. 31. Second, the recordings that were not posted to the website were provided to DOJ as part of Defendants' Section 5 Preclearance Submission. A copy of that submission was provided in discovery to Plaintiffs in 2015, yet it seems the first time Plaintiffs bothered to review the documents produced by Defendants in discovery was two years later, in June of 2017. *See* Ex. B to Pls.' Br. App.

Critically, Plaintiffs never served any discovery request specifying the redistricting hearing recordings as documents or tangible things they were seeking. Rather, Plaintiffs served an overly broad and vague request for "[a]ll documents related to any claim asserted in the Live Complaint." App. 10 (Defendants' Response to Request for Production No. 3). In response, Defendants incorporated their general objections to overly broad requests and requests for information equally available to Plaintiffs. *See id.* at 6, ¶¶ 2, 4; 6. Defendants' objections were well placed—the Federal Rules of Civil Procedure do not permit such overly broad discovery requests. *See* Fed. R. Civ. P. 34(b)(1) (noting that discovery requests "must describe *with reasonable particularity each item* or category of items" requested (emphasis added)). Indeed, courts have specifically rejected the exact document request at issue here as improper. *See, e.g.*, *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 453-54, 458 (N.D.

Tex. 2015) (rejecting as overbroad request for "[e]ach document . . . referring or relating to any of the operative allegations of the Complaint (bracket and ellipses in original)).

After being served Defendants' objections and responses, Plaintiffs did nothing. They did not file a motion to compel or seek a ruling on Defendants' objections. Not until June of 2017 did they give any hint that they viewed their overly broad discovery request as actually seeking hearing recordings, most of which were already publicly available online. Defendants met their discovery obligations—they responded in writing, produced documents, and objected where appropriate. If Plaintiffs thought the objections were unwarranted—a view that would be contrary to the relevant case law—their obligation was to say so at some reasonable time after the Responses and Objections were served. But Plaintiffs certainly cannot wait two years to complain about their failure to receive recordings that they never asked for, never mentioned, and never specified—to Defendants, the Court, or otherwise—and then use that complaint as a justification for failing to raise disqualification earlier.[9]

Dilatory discovery conduct cannot plausibly serve as an excuse for a dilatory disqualification request. Plaintiffs' motion is untimely, and their only purported justification for their delay has no merit, whether on its own terms as a discovery

_____

[9] Even though Plaintiffs never actually sought them in discovery, Defendants subsequently produced all the digital files they later requested for the first time by email in the summer of 2017.

dispute, or as an excuse for their tardy disqualification motion.  This alone requires denial of their motion.[10]

## III.   Defendants Would Be Prejudiced by Mr. Hebert's Disqualification.

Plaintiffs' Brief in support of their motion to disqualify states Defendants would not be prejudiced by Mr. Hebert's disqualification.  Pls.' Br. at 2.  That is untrue.  First, Defendants have already been tactically disadvantaged because, as a result of the postponement of the Plaintiffs' expert deposition, one of Plaintiffs' experts will now be deposed last among the experts despite Plaintiffs' bearing the

---

[10] Plaintiffs also make a confusing argument related to Mr. Angle's deposition testimony.  Plaintiffs note that "[o]nly last week, when the Defendants refused to produce contemporaneous documents (pursuant to a subpoena duces tecum) that their own expert Matt Angle's report had: (a) disclosed to exist; and (b) partially disclosed the contents of, did Plaintiffs finally conclude that they must, indeed, file the Motion to Disqualify." Pls.' Br. at 13 (footnote omitted).  But all that Mr. Angle has disclosed is that he was instructed by counsel to maintain two districts as effective minority opportunity districts in order to comply with the Voting Rights Act.  Those statements by Mr. Angle were not a breach of attorney-client privileges or disclosure of legal communications between Mr. Hebert and Mr. Angle because those same statements (the need to comply with the Voting Rights Act) had been made by Mr. Hebert at the public redistricting hearings in 2011.  Mr. Angle's Report and deposition testimony simply confirmed the information Mr. Hebert had publicly given Defendants in 2011.

Plaintiffs' motion to disqualify Mr. Hebert as counsel (or to force Mr. Angle to disclose the private, confidential legal advice Mr. Hebert gave him) flies in the face of this Court's December 23, 2016 order granting in part and denying in part Plaintiffs' Motion to Compel Discovery: "Because plaintiffs do not dispute that the attorney-client privilege applies to all communications between defendants' counsel and Angle Strategies that enabled defendants' counsel to give legal advice, the court will not compel the production of such communications. Nor will the court order the production of any documents that contain the communication of legal advice among defense counsel, Angle Strategies, and the members of the Commissioners Court."  Order, ECF No. 60 at 24.  This order too reflects that Mr. Hebert was not then and is not now a necessary witness and, if not raised before, triggered Plaintiffs' obligation to raise this issue back in 2016.

burden of proof.  Second, disqualification of Mr. Hebert would rob Defendants of their most experienced counsel.  Mr. Hebert has served as lead legal counsel in numerous voting rights cases over the last five decades.  He spent over twenty years in the Civil Rights Division of the United States Department of Justice, most of that time in the Voting Section where he served in a number of supervisory capacities, including Acting Chief, Deputy Chief, and Senior Litigation Counsel.  He has served as legal counsel in several cases decided by the U.S. Supreme Court, including, among others: *Johnson v. DeGrandy*, *LULAC v. Perry* and *Gill v. Whitford*.  Recently, one federal court noted Mr. Hebert was "a nationally renowned subject-matter expert on the Voting Rights Act with over 40 years of experience[.]" *State of Texas v. United States*, No. 11-1303 (RMC), Memorandum Opinion, March 30, 2017.

Third, Plaintiffs mistakenly claim that one of Defendants' counsel, Mr. Dunn, is "lead counsel on every pleading filed with the Court." *Id*. at 9.  Simply because Mr. Dunn's signature appears on most pleadings does not make him lead counsel.  In fact, none of the Defendants' counsel is serving lead counsel—they equally divide responsibilities in this case, and Mr. Hebert has written or edited every filing made by Defendants.  Plaintiffs have designated four expert witnesses and counsel for Defendants have divided responsibility for deposing those witnesses (and cross-examining at trial if one is held).  In sum, while Mr. Hebert's co-counsel have extensive

experience in voting rights and redistricting litigation, disqualification of Mr. Hebert would deprive Defendants of being represented throughout the remainder of this case by legal counsel with the most experience in cases such as this and a national reputation of subject matter expertise.   Indeed, it is likely Mr. Hebert's extensive experience motivates Plaintiffs to seek his disqualification.

## IV.   The Expenses Sought in Defendants' Motion for a Protective Order Are Appropriate.

Plaintiffs argue that awarding Defendants the expenses incurred by Mr. Hebert in traveling to Dallas to take their expert's deposition and the time he spent preparing the Motion For A Protective Order is unwarranted.  Pls.' Br. at 14.  Plaintiffs do not claim that either the amount of expenses incurred, or the time spent, or the hourly rate sought are unreasonable or excessive. They simply claim that the costs incurred are a result of Defendants' actions, not Plaintiffs'.  *Id.*

As noted above, Plaintiffs never raised the issue of disqualification until the start of the depositions in Dallas in late October.  Indeed, given the agreement that had been reached between Plaintiffs' and Defendants' counsel in September that neither Mr. Hebert nor Mr. Rios would be called as witnesses by Plaintiffs, it was entirely reasonable for Mr. Hebert to travel to Dallas and take the deposition of one of Plaintiffs' four identified experts. Counsel for Plaintiffs' complete failure to raise any objection or allege a possible ethical violation until after Mr. Hebert had travelled

19

from Washington, DC to Dallas and was ready to start the deposition shows not only a lack of professional courtesy, but was foolhardy and vexatiously multiplied the proceedings in this case. *See* 28 U.S.C. § 1927.

Plaintiffs' claim that the parties could have called this Court for a ruling on the objection is nonsense. Plaintiffs had only objected to Mr. Hebert's presence in the deposition room at that time and for the first time hinted that they perceived a possible ethical violation if he took the deposition. It wasn't until three days ago that they finally sought his disqualification, after coyly hiding behind the log for years before raising the issue. It wasn't until Defendants forced Plaintiffs' hand by moving for a protective order that Plaintiffs had to come out from behind the log and make their disqualification arguments. The issues raised by Plaintiffs—confusing, meritless and nonsensical[11] as they are—could hardly have been dealt with in a telephone call to this Court, as Plaintiffs suggest. Pls.' Br. at 14. Plaintiffs' brief alone on this issue is 15 pages long, as is this response in opposition. In a case such as this, where counsel with 45 years of professional experience as an attorney is threatened by another party in litigation with a possible bar complaint, such a matter has to be taken very seriously

---

[11] For example, Plaintiffs' entire Brief in support of their Motion to Disqualify is premised on the view that they intend to rely on Mr. Hebert's 2011 statements during redistricting public hearings, not on his live testimony as a trial witness. Indeed, Plaintiffs' counsel stated unequivocally in the email exchange attached to Defendants' Motion For A Protective Order that Plaintiffs would not call him as a witness. Yet in their motion to disqualify Mr. Hebert, they claim that "Mr. Hebert's testimony [is] necessary." Pls.' Br. at 5.

and is best resolved with written motions and briefing.

## CONCLUSION

For the foregoing reasons the Motion to Disqualify should be denied, the protective order granted and Defendants' costs recovered.

Dated this 16th day of November, 2017.

Respectfully submitted,

BRAZIL & DUNN
*/s/ Chad W. Dunn*

Chad W. Dunn
SBN 24036507
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
chad@brazilanddunn.com

J. Gerald Hebert (*Pro Hac Vice*)
VA Bar No. 38432
J. Gerald Hebert, PC
191 Somervelle Street, #405
Alexandria, VA 22304
(703) 628-4673
hebert@voterlaw.com

Rolando Leo Rios
SBN: 16935900
Law Office of Rolando L. Rios
115 E. Travis, Suite 1645
San Antonio, Texas 78205 Telephone: (210) 222-2102
Facsimile: (210) 222-2898
rrios@rolandorioslaw.com

Peter L. Harlan
SBN: 9011300
Dallas County District Attorney's Office
Frank Crowley Courts Building 133 N.
Riverfront Blvd., 11th Floor Suite C4-
2LB 19
Dallas Texas 75207
Telephone: (214) 653-3690
Facsimile: (214) 653-2899
pharlan@dallascounty.org

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November 2017, a true and correct copy of the foregoing was served by the Court's Electronic Case Filing System on all counsel of record.

By: /s/ Chad W. Dunn
Chad W. Dunn

22