IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANNE HARDING, et al., § | |
| § | |
| Plaintiffs, § | |
| § | Civil Action No. 3:15-CV-0131-D |
| VS. § | |
| § | |
| COUNTY OF DALLAS, TEXAS, § | |
| et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging violations of § 2 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10301 *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment, plaintiffs seek to disqualify defendants' counsel from taking an active role before the court in the presentation of this matter. For the following reasons, the court denies the motion.

I

Plaintiffs in this case are Anglo residents of Dallas County, Texas who allege that, as a result of the Dallas County Commissioners Court's ("Commissioner's Court's") redistricting of commissioner districts in 2011, Anglos who reside in Dallas County are being denied under the current map ("2011 Map") the opportunity to elect candidates of their choice to the Commissioners Court. Plaintiffs sue the County of Dallas, Dallas County Judge Clay Lewis Jenkins, and Dallas County Commissioners Dr. Theresa M. Daniel, Mike Cantrell, John Wiley Price, and Dr. Elba Garcia, alleging claims under the VRA and the Equal Protection Clause of the Fourteenth Amendment.

Defendants' counsel in this case, J. Gerald Hebert, Esquire ("Hebert"), served as legal counsel to Dallas County in 2011 when the redistricting plan at issue in this case—the 2011 Map—was drawn. In his role as Dallas County's counsel, Hebert provided legal advice to the Commissioners Court and made statements at various public hearings in 2011. During discovery in this case, when plaintiffs' counsel indicated to defendants that plaintiffs intended to rely at trial on the public statements that Hebert had made in 2011, defendants' counsel advised plaintiffs' counsel that Hebert stood by the statements he had made at public hearings in 2011; that he had no intention of serving as a witness and thus there was no risk that he would change his statement or position; and that "any statements made by legal counsel . . . to the Dallas County Commissioners[] Court in public sessions in 2011 or during public hearings on the redistricting plan were part of the public record on the redistricting process and, as such, would *not* be contested on grounds of authenticity or admissibility." Ds. Opposed Emergency Mot. for Protective Order at 2-3. Notwithstanding these representations, plaintiffs have moved to disqualify Hebert from taking an active role before the court in the trial of this case.[1]

---

[1]On November 3, 2017 defendants filed an opposed emergency motion for a protective order, seeking an order from the court

> that will protect counsel from a baseless complaint by Plaintiffs or Plaintiffs' counsel with state bar authorities or any other entities regarding his legal representation in this case. There simply is no basis to disqualify him as counsel, and he should be permitted to continue to represent the Defendants in this case as he has done without objection from Plaintiffs since 2015.

II

Plaintiffs move to disqualify Hebert under Rule 3.08(c) of the Texas Disciplinary Rules of Professional Conduct, Tex. Disciplinary R. Prof'l Conduct 3.08(c), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A, Art. 10, § 9 (West 2013). They seek to preclude Hebert from making arguments or presenting evidence to the court during trial of this case. Plaintiffs maintain that "the meaning of [his] admissions of record . . . concern a central, contested issue." Ps. Br. 2. They contend that Hebert participated in drawing the 2011 Map and made material, factual statements about a contested issue in this matter, i.e., the use of race as the predominant factor in drawing the 2011 Map; that the meaning of Hebert's statements is material evidence of intent that is not obtainable from alternative sources; and that because it is likely that defendants will dispute plaintiffs' interpretation of Hebert's statements, Hebert's participation as a speaking lawyer in this matter would require him to comment on, characterize, and frame an argument around his own factual testimony and that of others concerning his actions in 2011. Plaintiffs also contend that the balance of harms supports disqualification because Hebert is just one of several attorneys representing the defendants in this litigation, so any prejudice worked on defendants by Hebert's

---

Ds. Opposed Emergency Mot. for Protective Order at 14. On November 13, 2017 plaintiffs filed a combined objection to defendants' emergency motion for protective order and cross-motion to disqualify Hebert from taking an active role before the court in the presentation of this matter. On November 17, 2017, in light of plaintiffs' November 13, 2017 cross-motion, the court entered an order denying defendants' opposed emergency motion for protective order. Plaintiffs' cross-motion to disqualify Hebert remains pending and is being decided by this memorandum opinion and order.

disqualification from serving as a talking lawyer in this action will be minimal.

Defendants respond that Hebert is not a necessary witness to any of plaintiffs' claims and that any testimony he would provide is cumulative of other sources. They contend that plaintiffs have not met their burden for disqualification because they have not identified which of Hebert's public statements they contend preclude his continued role as a "speaking" attorney and have not explained how these statements make Hebert a necessary witness, why they do not suffice in themselves as evidence absent any additional testimony, or how Hebert's continued participation might prejudice his clients; that Hebert publicly stated to the County Commissioners that a priority was complying with the VRA and that "[r]acial considerations have not played any predominant or driving force role in the creation of the districts except insofar as we have attempted to avoid retrogression," Ds. Br. 5-6, and that plaintiffs' interpretation of these statements as Hebert's communicating that race predominated in the consideration of the line drawing, and that it was done with the express intent to fragment Dallas's Anglo minority "makes absolutely no sense," *id.* at 6; that even if plaintiffs' interpretation of Hebert's statements was correct, Hebert is still not a necessary witness to any material fact because plaintiffs' live complaint does not allege a racial gerrymandering/*Shaw* claim; that plaintiffs have expressly disclaimed any intent to call Hebert as a witness; that plaintiffs have not shown how anybody, let alone Hebert's clients, would be prejudiced by his speaking in the courtroom, and that Hebert's statements in fact support defendants' position; that Hebert's statements that the redistricting plan needed to maintain two effective minority opportunity districts to comply with the VRA cannot

plausibly be a central or material issue for plaintiffs in a case where they contend that the plan violates the VRA; and that Hebert's public statements at the redistricting hearing are admissible evidence and speak for themselves, and any testimony by Hebert would be duplicative of the public record statements.[2]

III

A

"[D]isqualification cases are governed by state and national ethical standards adopted by the court." *United States v. Starnes*, 157 Fed. Appx. 687, 693 (5th Cir. 2005) (per curiam) (alteration in original) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th Cir. 1995)). The disqualification of an attorney "requires a balancing of the likelihood of public suspicion against a party's right to counsel of choice." *FDIC v. U.S. Fire Ins.*, 50 F.3d at 1316. Disqualification, especially when prompted by the opponent, "presents a palpable risk of unfairly denying a party the counsel of his choosing. Therefore, notwithstanding the fundamental importance of safeguarding popular confidence in the integrity of the legal system, attorney disqualification . . . is a sanction that must not be imposed cavalierly." *Id.* As the parties seeking disqualification, plaintiffs bear the burden of proof. *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992) ("[T]he party seeking disqualification bears the burden of pro[of.]").

---

[2]Defendants also argue that plaintiffs' motion is untimely and that they would be prejudiced by Hebert's disqualification. Because the court concludes that plaintiffs have failed to demonstrate that Hebert is a necessary witness, it need not address defendants' additional arguments.

Plaintiffs contend that Hebert should be disqualified because he is a central fact witness whose admissions on the record go to the core of the matters before the court. Rule 3.08(a) of the Texas Disciplinary Rules of Professional Conduct states: "A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client[.]" Tex. Disciplinary R. Prof'l Conduct 3.08(a). Rule 3.08(c), provides, in pertinent part: "[i]f the lawyer to be called as a witness could not also serve as an advocate under this Rule, that lawyer shall not take an active role before the tribunal in the presentation of the matter." Rule 3.7(a) of the American Bar Association Model Rules of Professional Conduct states, in relevant part:

> A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Model Rules of Prof'l Conduct R. 3.7(a) (2014). These "lawyer-as-witness" rules are not implicated, however, "unless the lawyer is 'likely to be a necessary witness.'" *Starnes*, 157 Fed. Appx. at 693 (quoting *United States v. Watson*, 87 F.3d 927, 932 (7th Cir. 1996)). "A lawyer is not 'likely to be a necessary witness' when evidence pertaining to each matter to which he could testify is available from another source." *Id*. at 693-94 (citing *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001)); *see also Horaist*, 255 F.3d

at 267 (holding that, because lawyer's potential testimony was cumulative of other evidence, lawyer was not necessary witness and trial court did not err in refusing to disqualify him).

B

Plaintiffs have failed to establish that Hebert is likely to be a necessary witness in the trial of this case. In support of their motion, plaintiffs contend that Hebert "made statements on the record that Plaintiffs will rely on, and have informed the Defendants they will rely on, in proving their case." Ps. Br. 7. They also maintain that Hebert's statements, which are "the primary contemporaneous statements made of record on behalf of the Commissioners Court as a whole," "constitute evidence of intent that is not obtainable from alternative sources." *Id*. at 8. Rule 3.08(c) of the Texas Disciplinary Rules of Professional Conduct, on which plaintiffs rely,[3] states that "[i]f the lawyer *to be called as a witness* could not also serve as an advocate under this Rule, that lawyer shall not take an active role before the tribunal in

---

[3]Plaintiffs rely only on Rule 3.08(c) in their motion to disqualify:

> The Plaintiffs accept Mr. Hebert's contention that Rule 3.08(a) is inapplicable because the Defendants have no intention of calling Mr. Hebert to testify at trial (if the Plaintiffs plan to insist that Mr. Hebert be held to this representation). The Plaintiffs have no idea if (and are willing to presume that) Mr. Hebert obtained at the outset of this litigation the client consents from the Defendants that Rule 3.08(b) requires. No, the Plaintiffs have objected — pursuant to Rule 3.08(c) — only that Mr. Hebert, a central fact witness whose admissions on the record go to the core of the matters before the Court, may not "take an active role before the [Court] in the presentation of this matter."

Ps. Br. 1-2 (alteration in original).

the presentation of the matter. *Id.* (emphasis added). Plaintiffs' intention to rely on Hebert's public statements from 2011 is insufficient to establish that Hebert is likely to be "*called as a witness*" at trial. Plaintiffs do not contend that they intend to call Hebert to testify at trial. Nor have they established, or even argued, that any testimony from Hebert is likely to be required at trial.

In *Ayus v. Total Renal Care, Inc.*, 48 F.Supp.2d 714, 717 (S.D. Tex. 1999), on which plaintiffs rely, "[a]lthough the lawyers for Plaintiffs state[d] that they d[id] not intend to call [defense counsel or any other lawyers from his firm] as witnesses," the court concluded that the lawyer "may ultimately become a necessary witness which would place him in the awkward position of acting as both an advocate and witness before the jury." *Id.* Here, in contrast, plaintiffs have made no showing that Hebert may "ultimately become a necessary witness." *Id.* They argue only that they intend to use his prior public statements at trial, the use of which defendants have agreed not to contest. The mere fact that plaintiffs' counsel and defense counsel will likely provide the court with differing legal interpretations of Hebert's public statements from 2011 is insufficient to establish that Hebert is or may become a necessary witness at trial.[4]

Moreover, where evidence pertaining to the matter on which the attorney could testify

---

[4]In addition, because this is to be a bench trial rather than a jury trial, the court is not concerned that Hebert's role as advocate at trial is likely to confuse a jury. *See, e.g.,* Tex. Disciplinary R. Prof'l Conduct 3.08, cmt. 4 ("[T]he principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact.").

is available from another source, the attorney is not likely to be a necessary witness. *Horaist*, 255 F.3d at 267. Plaintiffs apparently intend to rely on Hebert's public statements from 2011 to prove the intent of the Commissioners Court in drawing the 2011 Map. *See* Ps. Br. 7. But plaintiffs have not shown that any of the evidence on which they intend to rely at trial is unavailable from a source other than Hebert's trial testimony. *See In re Duke Invs., Ltd.*, 454 B.R. 414, 423 (Bankr. S.D. Tex. 2011) (noting that, under Tex. Disciplinary R. Prof'l Conduct 3.08(a), "a movant has the burden of showing that the attorney's testimony is 'necessary to establish an essential fact on behalf of the [non-movant attorney's] client,' and the movant must explain why 'other sources revealed in the record,' such as the testimony of other witnesses or other pertinent records in evidence, are insufficient." (alteration in original) (citations omitted)). Accordingly, because there is other evidence in the record on which plaintiffs can rely to establish defendants' intent in drawing the 2011 Map, the court holds that Hebert's trial testimony is not the sole source of evidence necessary to establish an essential fact in this case, i.e., the intent behind drawing the 2011 Map.

Because plaintiffs have not established that Hebert is a necessary witness in the trial of this case, the court denies their motion under Tex. Disciplinary R. Prof'l Conduct 3.08(c) to disqualify Hebert from taking an active role before the court in the presentation of this matter.

\* \* \*

Accordingly, for the reasons explained, plaintiffs' motion to disqualify is denied.

**SO ORDERED**.

March 5, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE